## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO

SUNLESS, INC.,

               Plaintiff,

    v.

PALM BEACH TAN, INC. and
PALM BEACH TAN FRANCHISING, INC.,

              Defendants.

CIVIL ACTION NO. _____

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Sunless, Inc. ("Sunless") by and through its undersigned attorneys brings this action against Defendants Palm Beach Tan, Inc. ("PBT") and Palm Beach Tan Franchising, Inc. ("PBT Franchising") (together, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action under the Lanham Act for false designation of origin arising from Defendants' reverse passing off Sunless' tanning booths as their own and for false advertising arising from Defendants' unlawful commercial activities in promoting and selling spray tanning services by means of false and misleading statements in commercial advertising.

2.     Sunless owns the Mystic Tan® Trademarks (as defined herein).  Defendants have obliterated those trademarks from Mystic Tan® Kyss spray tanning booths ("Mystic Tan® Booths") without authorization and have falsely rebranded those booths with a purported PBT trademark "Sunscape", all while continuing to use those booths ("Rebranded Booths") to deliver Mystic Tan® spray tanning services.

3.     Defendants are advertising and promoting the falsely labelled "Sunscape" Rebranded Booths to sell spray tanning services to consumers in salons across the country.

4.     Defendants have falsely advertised the Rebranded Booths on their website https://palmbeachtan.com ("PBT Website") as having "unmatched customization" ("Unmatched Customization Claim").[1]

5.     The Unmatched Customization Claim in relation to the Rebranded Booths is literally false, as the customization capabilities of the Rebranded Booths are not unmatched; rather, the customization capabilities of the Rebranded Booths are exactly the same as those of the Mystic Tan® Booths because they *are* Mystic Tan® Booths.

6.     Consumers who previously visited Defendants' tanning salon locations multiple times as part of monthly memberships and received tans in the same Mystic Tan® Booths that Defendants are now marketing as the Rebranded Booths are likely to be confused as to the source of the tanning services they receive.

7.     Defendants' unlawful commercial activities in rebranding Mystic Tan® Booths as Sunscape booths are likely to cause confusion, mistake, and deception because the Mystic Tan® Trademarks are unquestionably strong and the Mystic Tan® Booths, tanning solution, and tanning services are offered in the same marketing channels (tanning salon locations), to the same consumers, and the Sunscape mark was adopted by PBT in bad faith to unlawfully piggyback on Sunless' valuable goodwill and reputation for high quality, state-of-the-art tanning booths, solutions, and services.

8.     Defendants' unauthorized rebranding of Mystic Tan® Booths with the false designation "Sunscape" is distinct from simply de-branding the spray tanning booth to bear no

---

[1] The URL on which the Defendants have made the Unmatched Customization claim is https://palmbeachtan.com/sunless-spray-tanning/ (last accessed Jan. 12, 2022).

source identifiers. Likewise, the rebranding is distinct from any instance in which Sunless manufactures booths for a tanning salon under the salon's brand pursuant to a contractual agreement. Defendants' unauthorized rebranding misappropriates Sunless' talents and goodwill in the Mystic Tan® Trademarks and is misleading to consumers and the trade as to the source of their tanning booths and services.

9.      Defendants' unlawful commercial activities in reverse passing off the Rebranded Booths as their own causes harm to spray tan consumers and to Sunless, as this unlawful conduct *inter alia*:

   a.    wrongfully misappropriates Sunless' talents in designing and maintaining the high-quality Mystic Tan® Booths with a reputation of delivering consistent, high quality tanning services;

   b.    deprives Sunless, the originator of the Mystic Tan® Booths, of the benefits of advertising/promotion and continuing to build the positive reputation Sunless has developed as the true source of high-quality spray tans;

   c.    harms consumers by misleading them as to the true source of the booths and tanning services they are using; and

   d.    falsely represents that the Rebranded Booths offer "unmatched" customization, depriving Sunless of a legitimate competitive advantage it developed in the creation of the Mystic Tan® Booths, ultimately reducing the goodwill in the Mystic Tan® brand.

10.     Defendants' conduct is done intentionally and in bad faith as Defendants have benefited for years by promoting the availability of Mystic Tan® products and services in the 500+ salon locations operated by Defendants and their franchisees.

11.     PBT is aware that the obliteration and rebranding of the Rebranded Booths is unauthorized since PBT and Sunless have been involved in ongoing litigation since January 2021 regarding the Mystic Tan® Trademarks, Mystic Tan® Booths, and Mystic Tan® tanning solution and services ("First Litigation").

12.     In the First Litigation, Sunless alleged that PBT and its franchisees committed trademark infringement (among other related claims) by circumventing Sunless' quality control measures for its Mystic Tan® branded tanning services through the use of a vinyl sleeve bearing a counterfeit Mystic Tan® tanning solution barcode ("Circumvention Device"), which enables the user to insert a cartridge of unauthorized solution into the sleeve within the Mystic Tan® Booth to trick the booth into believing it is receiving authorized Mystic Tan® solution when it is not.

13.     During discovery in the First Litigation, PBT ignored the deadline to respond to outstanding discovery requests and failed to disclose the conduct complained of herein in response to document requests and interrogatories pertaining to its efforts to "modify, update, or obscure any Mystic Tan® branding" on the Mystic Tan® Booths.

14.     PBT's responses to these requests were due on December 20, 2021; instead of responding to the outstanding discovery in the First Litigation and revealing its unlawful conduct, PBT instead represented in oral argument to the U.S. Court of Appeals for the Sixth Circuit on January 12, 2022 that Defendants launched the Rebranded Booths nationwide in Palm Beach Tan salons.

15.     As of January 14, 2022, PBT continues to make the false "unmatched customization" claim on its website by depicting the text "Unmatched Customization" next to a picture of a Rebranded Booth.

5995420.1

16.     PBT also has applied in the USPTO to register the trademark SUNSCAPE for tanning booths and tanning services, indicating its intent to sell booths and services under the Sunscape mark.

17.     Through this action, Sunless seeks the Court's assistance to stop Defendants' unlawful commercial activities that are irreparably harming Sunless and confusing consumers in the spray tanning industry as to the actual source of their tanning services received from Mystic Tan® Booths.

## **PARTIES**

### Plaintiff

18.     Plaintiff Sunless is a Delaware corporation with its headquarters in Macedonia, Ohio.

19.     Sunless is an industry leader in healthy spray tanning, and its brands collectively provide consumers with more than 14 million spray tans per year, delivered by more than 7,000 salons and professionals worldwide.

20.     Sunless is the exclusive owner of the Mystic Tan® Trademarks (as defined herein), as well as the exclusive manufacturer and distributor of its branded Mystic Tan® Booths, and Mystic Tan® Solution (as that term is defined herein), among other products and services.

21.     Sunless' Mystic Tan® brand enjoys a valuable reputation and enormous goodwill in the tanning industry and encompasses all aspects of the tanning process including the Mystic Tan® Booth, Mystic Tan® Solution, and Mystic Tan® tanning services. For over 10 years Sunless has used the Mystic Tan® Trademarks as source identifiers in commerce in connection with its Mystic Tan® Booths and services.

5995420.1

<u>Defendants</u>

22.     Defendant PBT is a Delaware corporation with a principal place of business in Dallas County, Texas.

23.     PBT is the largest indoor tanning chain in the United States with more than 500 locations across the country, including in this judicial district.  PBT owns more than 200 tanning salon locations itself, and through its wholly owned subsidiary Defendant PBT Franchising, it is a franchisor of more than 300 tanning salon locations.

24.     PBT's business, among other things, involves selling spray tans to consumers, including through selling consumers monthly "memberships" for various spray tan packages.

25.     Through their monthly memberships, consumers have repeatedly visited PBT locations to obtain Mystic Tan® services from the Mystic Tan® Booths. Depending upon which monthly membership a consumer purchases, the consumer could obtain multiple Mystic Tan® tans per month using the Mystic Tan® Booths.[2]

26.     When consumers go Palm Beach Tan salon locations to get a Mystic Tan® spray tan, the Mystic Tan® Trademarks are present at all steps of the Mystic Tan® tanning service, including being prominently displayed on the Mystic Tan® Booth, Mystic Tan® Solutions, and on directions associated with receiving their Mystic Tan® tanning services.

27.     Defendant PBT Franchising is a Delaware corporation with a principal place of business in Dallas County, Texas.

28.     PBT Franchising is a wholly owned subsidiary of PBT that enters into franchise agreements with Palm Beach Tan franchisees throughout the country.

---

[2] Defendants offer consumers a monthly membership that offers consumers "unlimited spray tanning each month". *See, e.g.*, https://palmbeachtan.com/sunless-spray-tanning/memberships-pricing/ (last accessed Jan. 13, 2022).

29.     Through PBT Franchising's agreements with franchisees, PBT Franchising and PBT set standards that Palm Beach Tan franchisees must follow throughout the country.  For example, PBT Franchising and PBT have required their franchisees to offer specific spray tanning booths, like the Mystic Tan® Booth, within their franchise salon locations.

## JURISDICTION AND VENUE

30.     Sunless' claims for false designation of origin through reverse passing off and false advertising arise under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and this Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental subject matter jurisdiction over Sunless' clams under Ohio law pursuant to 28 U.S.C. § 1367 because they are so related to claims within such original jurisdiction as to form part of the case or controversy.

31.     This Court has personal jurisdiction over PBT and PBT Franchising because, inter alia, they have continuous and systematic contacts with the State of Ohio; they have offered goods and services for sale in the State of Ohio; they have purchased commercial goods and services in the State of Ohio; they have infringed Sunless' rights and otherwise harmed Sunless, which suffers that harm in the State of Ohio; and/or they have by their actions harmed consumers in the State of Ohio.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and/or omissions giving rise to Sunless' claims occurred here.  Moreover, venue is proper because PBT and PBT Franchising are subject to personal jurisdiction in this District.

5995420.1

## FACTS COMMON TO ALL CLAIMS

### Sunless and Its Mystic Tan® Booths, Tanning Services and Spray Tan Solutions

31.     For over a decade, Sunless and its predecessor-in-interest have come to develop a reputation for designing, manufacturing and selling outstanding automated spray tan booths, including, but not limited to, the Mystic Tan® Kyss Booth that is the subject of this action.

32.     Sunless brand Mystic Tan® Booths have provided over 50 million spray tans since 2005.  A Mystic Tan® tan results from the marriage of the Mystic Tan® Booths, Mystic Tan® Solution, and the Mystic Tan® services to deliver unmatched customization.

33.     When consumers obtain Mystic Tan® tanning services from a Mystic Tan® Booth in a salon like the Defendants' salon locations, consumers typically request a "Mystic Tan®" tanning service and are led by a salon employee into a room with a Mystic Tan® Booth. The salon employee typically places the Mystic Tan® Solution cartridge into the Mystic Tan® Booth, which then sprays the consumer with the specific combination of Mystic Tan® Solution and any fragrances, bronzers, or enhancers selected by the consumer.

34.     Spray tanning involves the application to a person's skin of a solution that includes the color additive dihydroxyacetone ("DHA"), which is the active ingredient in spray tanning products.

35.     When spray tanning solution is applied to the skin, DHA reacts with proteins in the skin's surface layer to form a golden-brown color.

36.     After receiving a spray tan, the user's skin begins to darken two to three hours after application and reaches its peak color within 24 hours.  The color gradually fades through natural exfoliation, just like a tan from the sun.

5995420.1

37.     The Sunless and Mystic Tan® brands are well-known among tanning consumers and the trade and have developed a faithful following over the more than fifteen years of use in the tanning industry.

38.     Consumers are loyal to Mystic Tan® tanning services because of the consistency of their experience and the quality of its proprietary blend of premium ingredients engineered to optimize the spray tan experience and efficacy (including color, smell, uniformity, and longevity).

39.     The Mystic Tan® Booth provides consumers with the ability to customize their tans and to control the color of their tan, which provides them the ability to go from a glow to a deep, dark tan, in addition to the option to add other unique customization features like bronzers, fragrances, and accelerators to their tan (Mystic Tan® Booths' "Unmatched Customization" as further discussed below).

40.     As a result of Sunless' longstanding efforts and research and development, consumers have come to know that Mystic Tan® Booths and tanning services offer the same premium ingredients that are available in a professional spray to deliver a self-tan that looks natural and outlasts other self-tanning products.

41.     For use in Mystic Tan® Booths, Sunless also created proprietary Mystic Tan® solution ("Mystic Tan® Solution").

42.     The Mystic Tan® Solution is contained in single use cartridges that are then inserted into the Mystic Tan® Booth at the start of each tanning session.

43.     Once used, the Mystic Tan® Booth punches a hole in the Mystic Tan® Solution cartridges to prevent re-use and ensure that each batch of solution is fresh and high quality.

5995420.1

44.     Mystic Tan® Booth is compact and simple to operate via a touchscreen interface. It was designed to use patented Magnetan® technology, which energizes the tanning solution to attract a mist of the solution to the consumer's skin, thus reducing overspray.

45.     The Mystic Tan® Booth also has an on-board diagnostic and error reporting system.

46.     Mystic Tan® Booths prominently display Sunless' Mystic Tan® Trademarks to consumers on the outside of the booth, and the booth's touchscreen panel. An example of the visual appearance the Mystic Tan® Booth is depicted below.



47.     The Mystic Tan® Booth affords privacy, is warmed for user comfort, and provides an even, full-body spray tan in about three minutes.

48.     This is a close-up of the touchscreen panel on the Mystic Tan® Booth, and immediately below it is the gray, vertical receiver that opens outward to receive a single-use cartridge of Mystic Tan® Solution for each tanning session:

10



**Mystic Tan® Trademarks**

49.     Sunless owns the following trademarks covering spray tanning booths, tanning services and tanning solutions, collectively referenced herein as the "Mystic Tan® Trademarks." True and correct copies of the Mystic Tan® Trademarks are attached within **Exhibit A**.

50.     The Mystic Tan® Trademarks protect all aspects of the Mystic Tan® tanning process including tanning booths, tanning services, and tanning solutions used within the booths.

51.     The following Mystic Tan® Trademarks protect tanning booths:

| Trademark Registration No. | Trademark Description | Goods and/or Services | First Use in Commerce Date |
| --- | --- | --- | --- |
| 2,781,608 | MYSTIC TAN (word mark) | tanning booths | April 2001 |
| 5,367,589 | MYSTIC TAN KYSS (word mark) | automated spray tanning booths; tanning booths | September 1, 2016 |

5995420.1

52. The following Mystic Tan® Trademarks protect tanning solutions and lotions:

| Trademark Registration No. | Trademark Description | Goods and/or Services | First Use in Commerce Date |
|---|---|---|---|
| 2,863,411 | MYSTIC TAN (word mark) | tanning bronzing spray for skin treatment to be used in tanning booths | February 2000 |
| 2,758,671 | MYSTIC TAN (word mark) | lotions and skin products, namely, exfoliating lotions, self-tanning lotions, tan enhancing moisturizing lotions, sun-tanning preparations, sun screen and skin moisturizers | January 2001 |
| 3,554,083 |  | lotions and skin products, namely exfoliating lotions, self-tanning lotions, tan enhancing moisturizing lotions, sun-tanning preparations, sunscreen and skin moisturizers | April 1, 2008 |
| 3,768,816 |  | tanning bronzing and bronzer-free spray for skin treatment to be used in tanning booths | October 10, 2009 |

53. The following Mystic Tan® Trademarks protect tanning services:

| Trademark Registration No. | Trademark Description | Goods and/or Services | First Use in Commerce Date |
|---|---|---|---|
| 3,608,337 | MYSTIC TAN (word mark) | cosmetic skin tanning services, namely, sunless tanning with the use of a tanning booth and sunless tanning skin preparations, as well as skin care treatment applications | December 31, 2005 |
| 3,564,601 | M MYSTIC (design mark)  | tanning salon services | March 15, 2008 |

| Trademark Registration No. | Trademark Description | Goods and/or Services | First Use in Commerce Date |
|---|---|---|---|
| | | | |
| 3,564,600 |  | tanning salon services | March 15, 2008 |

54.    The Mystic Tan® Trademarks have appeared continuously on all authentic Mystic Tan® Booths and Mystic Tan® Solution sold by Sunless under the Mystic Tan® brand.

55.    Because of its tremendous sales history, and because of its exclusive, lengthy, and extensive use of the Mystic Tan® Trademarks on goods and services of superior quality, Sunless has developed substantial goodwill and an enviable reputation as the exclusive source of Mystic Tan® Booths and Mystic Tan® Solution, and consumers have come to associate those marks and the entire experience of receiving Mystic Tan® tanning services with Sunless.

56.    The Mystic Tan® Trademarks are entitled to the highest level of protection under U.S. law.

57.    An example of the Mystic Tan® Trademarks appearing on the Mystic Tan® Booth doors are depicted below.

5995420.1



58.     In addition to appearing on the Mystic Tan® Booth doors, the Mystic Tan®

Trademarks also appear on the Mystic Tan® Booth touchscreen display (just above where the

consumer inserts his or her cartridge of Mystic Tan® Solution). An example of the Mystic Tan®

Trademarks prominently appearing on the Mystic Tan® Booth touchscreen display is below.



14

## <u>The Unmatched Customization of the Mystic Tan® Booth</u>

59.     The Mystic Tan® Booth has for years been one of the top selling customizable spray tan booths in the United States.

60.     For years, Sunless has marketed and advertised the Mystic Tan® brand and Mystic Tan® Booth with a focus on its customization ability, stating "it's all about the fun of making choices!"[3]

61.     The Mystic Tan® Booth's single use tanning solution cartridge system allows users to customize the solution in their tan (allowing them to decide if they want a light, medium, or dark tone), and allows users to choose accelerators, bronzers, and different scents for their tanning experience.

62.     Those features allow Mystic Tan® Booth users to choose if they want to add bronzers for immediate color without waiting for the DHA to activate; if they want a scent (like coconut lime or warn vanilla) added to their tan; or if they want an accelerator added to their solution to balance their skin pH levels for an even, deeper, darker tan, among other benefits.

63.     Consumers value the ability to customize their tanning experience by choosing solution, bronzers, scents, and accelerators.

64.     Consumers have provided positive feedback to Sunless and Defendants relating to the ability to customize their tan when they use the Mystic Tan® Booths.

65.     Other spray tanning booths do not allow for the same level of customization, in part because they do not employ a single-use cartridge system.  Instead, other booths provide large batches of solution that cannot be individually curated for each user's specific needs or preferences.

---

[3] *See, e.g.*, https://sunlessinc.com/wp-content/uploads/2021/04/21135_SI-CB085_Booth-Comparison-Chart_032221.pdf (describing how Sunless markets the Mystic Tan® Booths).

5995420.1

66.     As such, the Unmatched Customization of the Mystic Tan® Booths is a material attribute of the Mystic Tan® Booths to consumers and is material to consumer purchasing decisions.

67.     Sunless has prominently featured the unique customization that is possible with the Mystic Tan® Booth in its promotions and advertisements. Some examples of such social media posts to consumers are depicted in the attached **Exhibit B**.

68.     Spray tanning consumers have expressed positive feedback concerning the customizability of Mystic Tan® tanning services possible in the Mystic Tan® Booth. Among other comments, consumers have stated they "love" playing around with different mixes.

69.     Examples of social media comments from consumers regarding the customizability of Mystic Tan® tanning services using the Mystic Tan® Booth are depicted within the attached **Exhibit B**.

### Defendants' Advertisement and Promotion of the Mystic Tan® Brand.

70.     The Defendants own, operate, and/or franchise the largest number of tanning salon locations in the United States.

71.     Prior to the Defendants' use and advertisement of the Rebranded Booth, the Defendants purchased hundreds of Mystic Tan® Booths from Sunless and employed them in their salons across the country to offer Mystic Tan® tanning services to consumers.

72.     Defendants have also instructed their franchisees through franchise agreements to purchase Mystic Tan® Booths from Sunless.

73.     Mystic Tan® Booths, as installed at the salons of Defendants and their franchisees, have for years displayed the Mystic Tan® Trademarks, which have been visible to consumers before, during, and after they receive spray tanning services.

16

74.    Defendants and their franchisees have purchased from Sunless and then installed more than 450 Mystic Tan® Booths in hundreds of salons in at least 30 states since 2017.

75.    Defendants have advertised Mystic Tan® Booths and Mystic Tan® tanning services to consumers available in their salons through the internet on their Website, their social media pages, and though direct email marketing, among other methods.

76.    An example of the Mystic Tan® Booth being advertised on Defendants' Website in August 2021 is depicted below prominently displaying the Mystic Tan® Trademarks[4].



77.    Just as Sunless has advertised/promoted the Unmatched Customization of the Mystic Tan® Booth and tanning services, Defendants have also prominently advertised and promoted the Unmatched Customization of the Mystic Tan® Booth and tanning services to consumers.

78.    Examples of how Defendants have advertised the Unmatched Customization of the Mystic Tan® Booth and brand are depicted below and are attached within **Exhibit C**.

---

[4] Image of Mystic Tan® Booth on Website obtained from the Internet Archive Wayback Machine in August 2021. *See* https://web.archive.org/web/20210818072135/https://palmbeachtan.com/sunless-spray-tanning/spray-tan-systems/

5995420.1

79.     As part of Defendants' business model, where consumers pay monthly fees for subscription spray tanning memberships, consumers repeatedly traveled to Palm Beach Tan salon locations to use the Mystic Tan® Booths to obtain Mystic Tan® tanning services.

80.     Consumers associate the positive tanning services they receive within the Mystic Tan® Booths with Sunless' Mystic Tan® brand and trademarks.

### **Defendants' Unlawful Conduct**

*Defendants' Reverse Passing Off of the Mystic Tan® Booth and Tanning Services*

81.     Sunless learned on January 12, 2022, that Defendants obliterated the Mystic Tan® Trademarks from their Mystic Tan® Booths and replaced them with a purported new trademark "Sunscape", all without Sunless' authorization.

82.     Counsel for PBT represented at oral argument to the U.S. Court of Appeals for the Sixth Circuit that, as of December 2021, Defendants had rebranded their Mystic Tan® Booths in Palm Beach Tan salons nationwide.

83.     Notwithstanding this representation, Mystic Tan® Trademarks still remain in some Palm Beach Tan salons, and some Palm Beach Tan salon employees still offer Mystic Tan® tanning services in the deceptive Rebranded Booths.

18

84. Defendants replaced the Mystic Tan® Trademarks with the deceptive designation "Sunscape" and falsely rebranded the Mystic Tan® Booths as "Sunscape" booths. An example of a Rebranded Booth in one of Defendants' Dallas, TX salon locations is depicted below.

 

85. An image of a Rebranded Booth taken from Defendants' Website as of January 14, 2022 is depicted below:



86. As depicted in the image, Defendants refer to the booth as the "Sunscape Booth", and the doors of the booth state "Sunscape" with a palm tree logo and the word SUNLESS

5995420.1

juxtaposed on the opposite door panel in large print. A larger version of the lettering on the Rebranded Booth is depicted below.



87.     The Rebranded Booths in Defendants' salons displayed the Mystic Tan® Trademarks, like all Mystic Tan® Booths, prior to this rebranding by Defendants.

88.     Defendants' Rebranded Booths originated from Sunless, not Defendants.

89.     Defendants' Rebranded Booths are actually Mystic Tan® Booths and have the exact same features as Mystic Tan® Booths allowing for customization of the spray tan, (including the time of the tan, the heat of the booth, the number of positions the user must stand in to receive the tan, the use of voice-guided instructions to direct the user through the tanning process, and the ability to further customize the tan with bronzers, fragrances and accelerators).

90.     The characteristics of the Rebranded Booths on Defendants' Website are the same as the characteristics previously displayed there for Mystic Tan® Booths, demonstrating that the booths are identical except for Defendants' newly added "Sunscape" marks.

91.     A comparison chart demonstrating the similarities of Defendants' descriptions is detailed below showing that Defendants have described the features of both the Rebranded Booth and Mystic Tan® Booths as offering "unmatched customization; "3 minutes"; "2 positions"; "voice-guided"; "heated"; "private enclosed booth"; and "customize with bronzers, fragrances, accelerators and more".

| Description of the "Sunscape" Booth on Palm Beach's Website on January 12, 2022 | Description of the MT Booth on Palm Beach's Website from Public Wayback Machine Archive as of August 18, 2021[5] |
|---|---|
|  |  |

92.     Defendants have engaged in unlawful reverse passing off of Sunless' Mystic Tan® Booths and services with the misleadingly labelled "Sunscape" booths and tanning services falsely denoting that PBT and PBT Franchising are the source of the spray tan booths and services, when they are not.

93.     Upon information and belief, through their franchise agreements, Defendants instruct and require their franchisees throughout the United States to engage in the same unlawful rebranding conduct as described herein.   Upon information and belief, the franchisees have complied.

94.     Defendants' reverse passing off has a substantial effect on interstate commerce as Defendants (1) own, operate, and/or franchise salons in over 30 states that previously used Mystic

---

[5] https://web.archive.org/web/20210818072135/https://palmbeachtan.com/sunless-spray-tanning/spray-tan-systems/

Tan® Booths to offer Mystic Tan® tanning services to consumers across the country; and (2) have advertised the Rebranded Booth on their Website and on the Internet.

95.     Consumers are likely to be confused as to the source of the Rebranded Booths in Defendants' salons, particularly as consumers have repeatedly used those same exact booths under the Mystic Tan® brand and have come to specifically seek out the Mystic Tan® Booths for their quality and unique customization features.

96.     Members of the public and trade are also likely to be confused by Defendants' unlawful commercial actions as the Rebranded Booths prominently display the word "SUNLESS" in juxtaposition with the rebrand, which is Sunless' company name.

97.     The Rebranded Booth is likely to confuse consumers as it directly competes with Sunless' own Mystic Tan® Booths in the same tanning industry; Sunless' Mystic Tan® Booth and services are available in the same marketing channels as Defendants' Rebranded Booth; and the Defendants have purposefully removed Sunless' Mystic Tan® Trademarks with the intent of capitalizing on the high-quality spray tanning services delivered in the Mystic Tan® Booths.

98.     Defendants' conduct described herein constitutes false designation of origin.

*Defendants' False Advertising of "Unmatched Customization" of Tans from Rebranded Booths.*

99.     As of January 14, 2022, Defendants' Website makes various representations to consumers concerning the Rebranded Booth.

100.    Defendants' Website makes the Unmatched Customization Claim regarding the Rebranded Booth depicted below:

5995420.1



101.    Defendants' Unmatched Customization Claim is false and/or misleading because the Rebranded Booths offer the same level of customization as the Mystic Tan® Booths (because the Rebranded Booths are Mystic Tan® Booths).

102.    Defendants have described the Mystic Tan® Booth as offering the exact same "unmatched customization" that they now attribute to the Rebranded Booths, as shown below:

| Description of Rebranded Website on January 14, 2022 | Description of the Mystic Tan® Booth on Website as of August 18, 2021[6] |
|---|---|
| **Premier Collection® Sunless** *Sunscape™ Booth* **UNMATCHED CUSTOMIZATION** • 3 minutes • 2 positions • Voice-guided • Heated • Private enclosed booth • Customize with bronzers, fragrances, accelerators and more | *Mystic Kyss Booth* **UNMATCHED CUSTOMIZATION** • 3 minutes • 2 positions • Voice-guided • Heated • Private enclosed booth • Customize with bronzers, fragrances, accelerators and more |

---

[6] https://web.archive.org/web/20210818072135/https://palmbeachtan.com/sunless-spray-tanning/spray-tan-systems/

103.    Defendants' Unmatched Customization Claim is unambiguously deceptive and literally false as the customization is matched by Sunless' Mystic Tan® Booth, as it is a Mystic Tan® Booth.

104.    Defendants' Unmatched Customization Claim is also misleading even if not literally false as a significant portion of reasonable tanning consumers are likely to be deceived by Defendants' statement into believing that the Rebranded Booth offers more customization to consumers than any other spray tanning booth.

105.    Defendants' Unmatched Customization Claim is material to consumer purchasing decisions as customization is a desirable feature for users of spray tan booths and provides the Mystic Tan® Booths with a competitive advantage.

106.    Defendants have made the Unmatched Customization Claim on their Website, in Interstate commerce.

107.    Defendants Unmatched Customization Claim harms Sunless as it robs and deprives Sunless' Mystic Tan® Booths and services of a legitimate competitive advantage, reducing consumers' incentive to seek out Mystic Tan® Booths and services rather than using the Rebranded Booth.

108.    Defendants' conduct described herein constitutes false advertising.

**<u>Defendants' Conduct Is Willful and Intended to Harm Sunless</u>**

109.     Defendants' conduct was undertaken willfully, with the intent to mislead consumers and harm Sunless.

110.    Prior to this Complaint, for over a year, Sunless, PBT, and PBT franchisees have been litigating trademark infringement and related claims concerning the Mystic Tan® Trademarks, booths and solution in the First Litigation.

24

111.    Namely, PBT and its franchisees have inserted a vinyl sleeve with a copy of Sunless' registered Mystic Tan® Solution barcode into the Mystic Tan® Booths to trick the Mystic Tan® Booths into accepting solution that is unauthorized and untested by Sunless for use in the Mystic Tan® Booths and to provide Mystic Tan® tanning services.

112.    As part of the First Litigation, on November 18, 2021, Sunless served requests for production on PBT and an interrogatory requesting information and documents pertaining to any changes, modifications, or updates PBT has made to the Mystic Tan® Booths in its possession and any efforts to modify, update, or obscure the Mystic Tan® branding on the door of the Mystic Tan® Booth.

113.    PBT's responses to these requests were due on December 20, 2021, but PBT did not respond and did not seek an extension of time before the response deadline.

114.    To date, PBT has not disclosed responsive documents or information to Sunless concerning the Rebranded Booth.

115.    On October 27, 2021, PBT filed trademark application serial number 97095042 with the United States Patent & Trademark Office ("USPTO") for the word mark "SUNSCAPE" ("Trademark Application").

116.    In the Trademark Application, PBT has sought registration of the word mark "SUNSCAPE" for:

(1)    Tanning Booths (International Class 11); and

(2)    Tanning salon services (International Class 44).

117.    PBT signed a declaration contained in the Trademark Application representing to the USPTO that it had a bona fide intention to use "Sunscape" as a mark in commerce on or in connection with the sale of tanning booths.

25

118.    By representing to the USPTO that it intends to sell tanning booths, PBT has represented that it competes with Sunless in the tanning booth market.

119.    By intending to compete with Sunless in the tanning booth market, and rebranding Sunless' Mystic Tan® tanning booth and services as their own, Defendants' actions are willful, unlawfully piggybacking on the goodwill and high-quality Mystic Tan® Booth and services cultivated over years by Sunless.

**Irreparable Harm to Sunless**

120.    Defendants' false designation of origin through the reverse palming off of Sunless' Mystic Tan® Booth and services deprives Sunless of the advertising value of its Mystic Tan® Trademarks and of the goodwill that would otherwise stem from the public's knowledge of the true source of their high-quality spray tan.

121.    Defendants' false advertising of the Rebranded Booth as offering "unmatched customization" also irreparably harms Sunless as it communicates that the Rebranded Booth offers more customization options than does Sunless' Mystic Tan® Booth, depriving Sunless' Mystic Tan® Booth of a legitimate competitive advantage, reducing consumers' incentive to seek out Mystic Tan® Booths rather than using the Rebranded Booth, and ultimately reducing the goodwill in the Mystic Tan® brand.

122.    As a direct and proximate result of the foregoing, Sunless has suffered irreparable harm to its brand value, reputation, and goodwill, and unless Defendants' conduct is enjoined, the harm will continue and increase.  Sunless has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

## FEDERAL FALSE DESIGNATION OF ORIGIN

123.     Sunless repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

124.     The conduct of Defendants alleged herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

125.     The Mystic Tan® Booths in Defendants' possession originated with Sunless and displayed the Mystic Tan® Trademarks.

126.     Defendants removed or obliterated Sunless' Mystic Tan® Trademarks from the Mystic Tan® Booths and replaced them with Defendants' own purported trademark "Sunscape", all without Sunless' authorization and with the intent to misappropriate the goodwill associated with Mystic Tan® Booths and Mystic Tan® spray tanning services for themselves.

127.     Defendants' conduct misrepresents the physical origin of the Mystic Tan® Booths in their possession by marketing the booths to consumers as the Rebranded Booths, when they are not.

128.     Defendants' reverse palming off substantially affects interstate commerce as Defendants are promoting the Rebranded Booth on the Internet to consumers and are offering the Rebranded Booths in Palm Beach Tan salons in some 30 states across the country.

129.     Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion as to the source of the Rebranded Booths (and services offered in them) and deception of members of the trade and public, and, additionally, injury to Sunless' goodwill and reputation, for which Sunless has no adequate remedy at law.

130. Defendants' actions demonstrate an intentional, willful, and malicious intent to misappropriate the superior quality of Sunless' Mystic Tan® Booths and services for themselves, to trade on Sunless' goodwill, to damage Sunless' business, and to deceive consumers, all to Sunless' great and irreparable harm.

131. Defendants' actions have caused and are likely to continue causing substantial injury to the public and to Sunless, and Sunless is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## SECOND CLAIM FOR RELIEF

## FEDERAL FALSE ADVERTISING

132. Sunless repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

133. Defendants' false and misleading statements constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

134. Defendants have disseminated the false and misleading statements to the public through commercial advertising and promotion, and thus caused them to enter interstate commerce.

135. Defendants' false and misleading statements of fact concerning the characteristics of the Rebranded Booths and the Unmatched Customization Claim are material and are likely to influence consumers' purchasing decisions.

136. To the extent it is being marketed as an alternative to the Mystic Tan® Booth, the Rebranded Booth directly competes with Sunless' Mystic Tan® Booth in the relevant market and

Defendants' false advertising claims have actually deceived or have a tendency to deceive a substantial number of consumers in that market.

137. Defendants' false and misleading advertising has caused and continues to cause irreparable injury to the public and to Sunless' business, goodwill and reputation, and Sunless has no adequate remedy at law. Upon information and belief, Sunless' actions will continue if not enjoined.

138. As a direct and proximate result of Defendants' false and misleading advertising, Sunless has incurred damages in an amount to be proven at trial. Such damages include, among other things, lost sales, harm to Sunless' business reputation and goodwill, lost profits and harm to the value and goodwill associated with the Mystic Tan® Trademarks and brand.

139. Defendants knew, or by exercise of reasonable care should have known, that the above-described advertising claims are false and/or misleading and are likely to deceive the public. Accordingly, Defendants' actions were willful, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

**UNFAIR COMPETITION UNDER THE LAW OF OHIO**

140. Sunless repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

141. The conduct of Defendants alleged herein constitutes unfair and deceptive trade practices under Ohio Rev. Code Ann. §§ 4165.01 to 4165.04 and under the common law of the State of Ohio. Defendants made false representations, false descriptions, and false designations of, on, or in connection with the Rebranded Booths. Defendants' conduct in its entirety is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the

Rebranded Booths originated with and were manufactured or distributed by Defendants when in fact they originated from Sunless and are Mystic Tan® Booths.

142.   Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Sunless' goodwill and reputation, for which Sunless has no adequate remedy at law.

143.   Defendants' actions demonstrate an intentional, willful, and malicious intent to misappropriate Sunless' goodwill, inter alia by claiming the superior quality Mystic Tan® Booths as their own manufactured tanning booth, to damage Sunless' business and to deceive consumers, all to Sunless' great and irreparable harm.

144.   Defendants' actions have caused and are likely to continue causing substantial injury to the public and to Sunless, and Sunless is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Sunless prays that:

1.   Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, franchisees, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined from:

        a.   passing off, palming off, or assisting in passing off or palming off Sunless' Mystic Tan® Booth as a booth that originated with Defendants, when it did not, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

5995420.1

b.      passing off, palming off, or assisting in passing off or palming off Sunless' Mystic Tan® Booth as a booth that originated with a source other than Sunless, when it did not, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

c.      further disseminating the false and deceptive advertising claims described herein in any form or medium, including, but not limited to, any packaging, point of sale materials, website pages, social media, or any other medium containing the false and deceptive advertising claims;

2.      Defendants be ordered to cease offering for sale, marketing, promoting, and selling tans in connection with the Rebranded Booths and to remove all "Sunscape" source identifiers from the Mystic Tan® Booths it uses to sell spray tanning services to consumers;

3.      Defendants be compelled to account to Sunless for any and all profits derived by Defendants from the sale of goods or services under or in connection with the Rebranded Booths and in connection with the false and/or misleading statements identified herein;

4.      Sunless be awarded all damages caused by the acts forming the basis of this Complaint;

5.      Based on Defendants' knowing and intentional false designation of origin, false advertising and other unlawful conduct alleged herein, damages be awarded to the full extent provided for by 15 U.S.C. § 1117(a) and as otherwise authorized by law;

6.      Defendants be required to pay to Sunless the costs and reasonable attorneys' fees incurred by Sunless in this action pursuant to 15 U.S.C. § 1117(a) and the state law provisions cited in this Complaint;

7.      Sunless be awarded prejudgment and post-judgment interest on all monetary awards; and

8.     Sunless be granted such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Sunless hereby demands a trial by jury on all claims and issues so triable.


Respectfully submitted,

*s/ Stephen E. Chappelear*
Stephen E. Chappelear (0012205)
sechappelear@eastmansmith.com
EASTMAN & SMITH LTD.
100 E. Broad Street, Suite 2100
Columbus, Ohio 43215
Tele: (614) 564-1440
Fax: (614) 280-1777

Frank M. Gasparo*
Marcella Ballard*
Eric A. Prager*
VENABLE LLP
1270 Avenue of the Americas
New York, NY 10022
Tele: (212) 307-5500
Fax: (212) 307-5598

*pro hac vice* to be filed

**Attorneys for Plaintiff**
**Sunless, Inc.**

5995420.1